**WORTHINGTON COMPRESSORS, INC., Appellant,**

v.

**Douglas M. COSTLE, Individually and as Administrator, Environmental Protection Agency, et al., Appellees.**

**GARDNER-DENVER COMPANY, Appellant,**

v.

**Douglas M. COSTLE, Individually and as Administrator, Environmental Protection Agency, et al., Appellees.**

**SCHRAMM, INC., Appellant,**

v.

**Douglas M. COSTLE, Individually and as Administrator, Environmental Protection Agency, et al., Appellees.**

**INGERSOLL-RAND COMPANY, Appellant,**

v.

**Douglas M. COSTLE, Individually and as Administrator, Environmental Protection Agency, et al., Appellees.**

**Nos. 80–1010 to 80–1013.**

United States Court of Appeals, District of Columbia Circuit.

Argued 4 Feb. 1981.

Decided 20 Aug. 1981.

---

Appeals from the United States District Court for the District of Columbia (D.C. Civil Action Nos. 78–1865, 78–1866, 78–2341 & 78–2378).

Richard H. Gimer, Washington, D. C., with whom Richard G. White and Nicky Calio, Washington, D. C., were on the brief for appellants.

Robert C. Seldon, Asst. U.S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U.S. Atty., and John A. Terry and John W. Polk, Asst. U.S. Attys., Washington, D. C., were on the brief for appellees. Michael J. Ryan, Asst. U.S. Atty.,

Washington, D. C., also entered an appearance for appellees.

Before PECK *, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, and WILKEY and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

Four manufacturers of portable air compressors [1] submitted reports describing their products to the Environmental Protection Agency (EPA). They now appeal from the district court's grant of summary judgment upholding EPA's decision to disclose that information under the Freedom of Information Act (FOIA).[2] Appellants assert that summary judgment was inappropriate because material facts are in dispute. They further contend that the Noise Control Act of 1972,[3] which *requires the submission* of these reports to EPA, also *precludes their disclosure.*[4] Relying on the Noise Control Act and FOIA Exemptions 3 [5] and 4,[6] appellants claim a right to compel nondisclosure of documents which are purportedly *confidential.* Finally, appellants challenge the adequacy of the procedures EPA used in reaching its decision. EPA has promulgated elaborate "confidentiality" regulations, but here it invoked a summary procedure to dispose of the confidentiality claim.[7] It notified the submitters that it would disclose the information in the absence of a legal action for a preliminary injunction. Appellants filed such an action in the district court on 6 October 1978, but that court summarily upheld the agency.[8]

We find that the district court erred in granting summary judgment, and we reverse and remand for further proceedings.

## I. HISTORY OF THE CASE

### A. *Background*

Silencing loud machinery such as air compressors is a prime method of abating noise pollution. "[T]o promote an environment for all Americans free from noise that jeopardizes their health or welfare," [9] Congress authorized EPA's Administrator to pre-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Worthington Compressors, Inc., Gardner-Denver Co., Schramm, Inc., and Ingersoll-Rand Co. are the four appellants.

2. 5 U.S.C. § 552 (1976).

3. 42 U.S.C. §§ 4901–4918 (1976).

4. *Id.* § 4912(a) requires that:
   Each manufacturer of a [regulated] product shall—(1) establish and maintain such records, make such reports, provide such information, and make such tests, as the Administrator may reasonably require to enable him to determine whether such manufacturer has acted or is acting in compliance with this chapter. . . .
   The next section of the Act states that:
   All information obtained by the Administrator or his representatives pursuant to subsection (a) of this section, which information contains or relates to a trade secret or other matter referred to in section 1905 of title 18, shall be considered confidential for the purpose of that section. . . .
   *Id.* § 4912(b)(1). This last section refers to the Trade Secrets Act, which provides a criminal penalty for a government official's unlawful disclosure of information which:
   concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association. . . .
   18 U.S.C. § 1905 (1976).

5. 5 U.S.C. § 552(b)(3) (1976) (mandatory disclosure not applicable to matters that are "specifically exempted by statute . . .").

6. *Id.* § 552(b)(4) (mandatory disclosure not applicable to "trade secrets and commercial or financial information obtained from a person and privileged or confidential").

7. *See* 40 C.F.R. §§ 2.201–2.209 (1980).

8. A Memorandum Order (Mem. Order), *reprinted in* Joint Appendix (J.A.) at 288, was entered on 20 December 1979. On 7 April 1980 this court stayed the district court's judgment pending appeal.

9. 42 U.S.C. § 4901(b) (1976).

scribe maximum noise levels for certain types of equipment.[10] The Administrator issued regulations requiring, in part, that manufacturers of this equipment verify that their new products comply with EPA's maximum noise standards before the products can be sold.[11] This reporting requirement compelled appellants to submit to EPA the test results and design specifications of their products in "production verification" reports. Appellants submitted each report under a claim of confidentiality.[12]

## B. The FOIA Requests and EPA's Decision to Disclose

The first in a succession of FOIA requests was filed with EPA on 19 July 1978 by a competing manufacturer of air compressors. The requesters generally sought all production verification and quality control reports submitted by other manufacturers, including four appellants.[13]

In considering FOIA requests for information submitted under a claim of confidentiality, EPA is required by its regulations to determine initially whether the information "may be entitled to confidential treatment" or whether it "clearly is not entitled to confidential treatment." If EPA finds the information "may be entitled to confidential treatment," the request is initially denied and a notice and comment proceeding is initiated to give the submitter an opportunity to explain why the information should not be disclosed.[14] If EPA finds

the information "clearly is not entitled to confidential treatment," however, the submitter's claims are summarily rejected.[15]

In this case EPA invoked the summary procedure and informed appellants by letter that their claims of confidentiality were summarily denied.[16] The decision rested on the conclusion that the requested information could be duplicated by anyone with access to their air compressors. "It is a simple matter," said the Director of EPA's Noise Enforcement Division, "to obtain a new compressor by buying it or renting it from a firm that leases such equipment."[17] Since the noise test procedure was repeatable, "anyone could procure a particular manufacturer's compressor and ascertain the noise level of the compressor."[18] This meant the *test results* were already available to the public. Similarly, the compressor *design and engineering specifications* could be discovered through "reverse engineering," whereby "[a] manufacturer's developmental engineers ... dismantle a compressor to examine the specific engineering features."[19] Thus, the information submitted in the reports was found "clearly ... not entitled to confidential treatment" because competitors could obtain it through *private testing* and *reverse engineering*.

## C. The District Court's Grant of Summary Judgment

To forestall EPA from releasing the reports, appellants initiated an action for ju-

---

10. *Id.* § 4905(c)(1).

11. 40 C.F.R. § 204.55 (1980).

12. *See* Affidavit of Richard G. Kozlowski 7, *reprinted in* J.A. at 191. At issue are approximately 23 of these reports submitted to EPA by the four appellants during 1978. *See id.* at 10–11, *reprinted in* J.A. at 194–95.

13. *See id.* at 6, *reprinted in* J.A. at 190. As of 31 May 1979, 14 companies had submitted production verification reports to EPA. *Id.* at 5, *reprinted in* J.A. at 189.

14. 40 C.F.R. § 2.204(d)(1) (1980).

15. *Id.* § 2.204(d)(2).

16. *See, e. g.,* Letter from Richard G. Kozlowski, Director of Noise Enforcement Division, to Worthington Compressors, Inc. ( 21 Sept. 1978), *reprinted in* J.A. at 70–71.

17. Affidavit of Richard G. Kozlowski 12, *reprinted in* J.A. at 196.

18. *Id.* at 8, *reprinted in* J.A. at 192.

19. *Id.* EPA also relied on the fact that "[t]he descriptions of the compressor configurations ... [contained in the reports] do not include any engineering blueprints or other detailed technical illustrations which are not provided to the purchaser." *Id.* at 13, *reprinted in* J.A. at 197.

dicial review in the district court.[20] Appellants contended in their complaint that the production verification information constituted *trade secrets* and *confidential commercial information* within the meaning of FOIA's Exemption 4, the Noise Control Act, and the Trade Secrets Act. They also argued that the Noise Control Act was a withholding statute within the meaning of FOIA's Exemption 3 and therefore specifically prohibited EPA from disclosing the information in question. Finally, appellants submitted that EPA's decision to disclose was founded on the erroneous assumption that private testing and reverse engineering were feasible means of acquiring accurate information and was reached in violation of the agency's own regulations.

Treating EPA's motion to dismiss as a motion for summary judgment, the district court first rejected the FOIA, Trade Secrets Act, and Noise Control Act claims, holding that the Administrative Procedure Act [21] provided the proper standard of review.[22] The court then found that the agency's determination that the reports were clearly not entitled to confidential treatment was not "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." [23] The dispositive fact for the district court, as for the agency, was the availability of private testing and reverse engineering. The Court wrote:

> [A]ll of the plaintiffs' claims suffer from the defective assumption that this material cannot easily be duplicated. The compressors are sold in commerce; anyone can but or rent them;[3] and by means of reverse engineering anyone can duplicate the tests and therefore the product

**20.** *See* 40 C.F.R. § 2.205(f)(2) (1980) (disclosure withheld pending outcome of action for preliminary injunction).

**21.** 5 U.S.C. §§ 702, 706 (1976).

**22.** Mem. Order at 2, *reprinted in* J.A. at 289.

**23.** 5 U.S.C. § 706(2)(A) (1976); *see* Mem. Order at 2, *reprinted* in J.A. at 289.

**24.** Mem. Order at 3 & n.3, *reprinted in* J.A. at 290. The court also found that the "design information submitted with respect to compressors appears to be fairly basic and includes

verification reports. See *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315 (1974).

---

[3] While there is some dispute about the degree of difficulty and the cost of acquiring a compressor for testing purposes, there is no dispute with respect to the fact that it can be done.[24]

Since EPA's finding that appellants had no right to confidential treatment was thus "not incorrect," the court upheld the agency's use of the summary procedure and granted summary judgment.[25]

## II. ANALYSIS

We agree with the district court that the APA provides appellants' only basis for judicial review. We hold, however, that summary judgment was inappropriate because of the disputed and unresolved matter of the commercial feasibility of reverse engineering and private testing. That these techniques are theoretically possible does not inevitably thwart a "reverse-FOIA" suit such as this one. We leave to the district court the question whether to return the case to EPA or to resolve the disputed factual and legal questions itself. To assist the court we conclude our opinion with a discussion of the relevant issues on remand.

### A. The APA Provides the Appropriate Standard of Review

■ Appellants assert that the Noise Control Act provides them with a private right of action to enjoin disclosure that would violate section 13(b)(1) of the Act. The district court rejected this claim, ruling

nothing that could not be secured from the general trade literature." *Id.* at 2, *reprinted in* J.A. at 289.

The court's reference to duplicating the tests through reverse engineering confuses the discovery of *test results* (through *private testing*) with the discovery of *design specifications* (through *reverse engineering*). We assume throughout this opinion that the court meant to refer to both reverse engineering and private testing.

**25.** *Id.* at 4, *reprinted in* J.A. at 291.

that EPA's action was reviewable only under the APA. The court ruled that *Chrysler Corp. v. Brown*,[26] which held that no private right of action exists under FOIA or the Trade Secrets Act, applied as well to the Noise Control Act because the latter "simply incorporates the Trade Secrets Act." [27]

We affirm the district court's ruling on this issue.[28] It is true, as appellants assert, that rights of action are more frequently implied in civil statutes such as the Noise Control Act than in criminal statutes such as the Trade Secrets Act. But appellants have failed to offer any positive justification for implying a right of action here. As the Supreme Court has recently held, "[t]he key to the inquiry is the intent of the legislature." [29] The statutory language itself provides no support for appellants' claim; it refers only to the Trade Secrets Act, which contains no express or implied right of action. Moreover, appellants were unable to direct us to *any* indication in the legislative history that a private right of action was intended.

Most important, review is available under the APA to determine whether EPA's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." [30] If EPA determines to disclose information in violation of the Noise Control Act, that action can be struck down as "not in accordance with law." Accordingly, there is no justification for implying a right

of action because one is not " 'necessary to make effective the congressional purpose.' " [31]

**B. The Grant of Summary Judgment was Improper**

**1. The test for confidentiality: substantial competitive harm.**

Initially, we observe that the basic legal issue resolved by the district court was the applicability of FOIA Exemption 4 to the production verification reports. EPA's determination that the reports were not entitled to confidential treatment was in effect a finding that Exemption 4 did not apply and that FOIA mandated disclosure. This is because Exemption 4, which provides that mandatory disclosure does not apply to "trade secrets and commercial or financial information obtained from a person and privileged or confidential," [32] is expressly adopted in EPA's disclosure regulations as a basis for determining claims of confidentiality. "Reasons of business confidentiality" is defined in the regulations "to encompass any concept which authorizes a Federal agency to withhold business information under 5 U.S.C. 552(b)(4) . . . ." [33]

Thus, when EPA determined that the reports were not "entitled to confidential treatment for reasons of business confidentiality," [34] it necessarily found that Exemption 4 did not apply. Moreover, the regulations state that "[a]s a matter of policy, EPA will not release a requested record if

---

**26.** 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

**27.** Mem. Order at 1–2 & n.1, *reprinted* in J.A. at 288–89.

**28.** We express no opinion on the question whether the Noise Control Act and the Trade Secrets Act are identical in their prohibitions; we hold simply that whatever the substantive reach of the Noise Control Act it does not contain an implied right of action. We also do not reach the question whether the Noise Control Act is a withholding statute within the meaning of Exemption 3. *See* p. 22 *infra.*

**29.** *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* —— U.S. ——, , 101 S.Ct. 2615, 2621, 69 L.Ed.2d 435 (1981).

**30.** 5 U.S.C. § 706(A)(2) (1976).

**31.** *Chrysler Corp. v. Brown,* 441 U.S. 281, 317, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979) (quoting *J.I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964)).

**32.** 5 U.S.C. § 522(b)(4) (1976).

**33.** 40 C.F.R. § 2.201(e) (1980). This definition also encompasses "any concept which requires EPA to withhold information from the public for the benefit of a business under 18 U.S.C. 1905 or any of the various statutes cited in § 2.301 through § 2.309." *Id.*

**34.** *Id.* § 2.202(a).

EPA has determined that one or more of [Exemptions 1, 3, *4*, 6, 8, and 9] applies to the record, except when ordered to do so by a Federal court or in exceptional circumstances . . . ."[35] The regulatory scheme thus attempts to deal with allegedly confidential information by disclosing all that falls outside of Exemption 4 (unless some other statute precludes disclosure) and withholding all that falls within Exemption 4. Thus one of the problems before the district court was—and will be—whether this filed information falls within Exemption 4.

█ The test for determining confidentiality under Exemption 4 was set forth in *National Parks & Conservation Association v. Morton*: information is confidential if its disclosure would (1) "impair the government's ability to obtain necessary information in the future," or (2) "cause substantial harm to the competitive position of the person from whom the information was obtained."[36] Since submission of noise test information is compulsory under the Noise Control Act, the Government's ability to obtain information is not at issue here. The relevant test is thus whether disclosure will cause *substantial competitive harm* to appellants.

█ The substantial competitive harm test is rather simple to apply in the typical reverse-FOIA case where Government disclosure is the sole means by which competitors can gain access to the requested information. The court considers how valuable the information will be to the requesting competitors and how much this gain will damage the submitter. In this case, however, we have the additional wrinkle that the requested information is available, *at some cost*, from an additional source. In our view, this requires that the inquiry be expanded to include two considerations: (1) the *commercial value* of the requested in-

formation, and (2) the *cost of acquiring* the information through other means.

The first consideration is based on the obvious fact that a submitter can suffer competitive harm only if the requested information has commercial value to competitors. When the information does have commercial value, the second consideration comes into play. If the information is freely or cheaply available from other sources, such as reverse engineering, it can hardly be called confidential and agency disclosure is unlikely to cause competitive harm to the submitter. If, on the other hand, competitors can acquire the information only at considerable cost, agency disclosure may well benefit the competitors at the expense of the submitter.

We believe the latter possibility deserves close attention in Exemption 4 cases. Because competition in business turns on the relative costs and opportunities faced by members of the same industry, there is a potential windfall for competitors to whom valuable information is released under FOIA. If those competitors are charged only minimal FOIA retrieval costs for the information, rather than the considerable costs of private reproduction, they may be getting quite a bargain. Such bargains could easily have competitive consequences not contemplated as part of FOIA's principal aim of promoting openness in government.[37]

The dimensions of the windfall can be measured by evaluating the *commercial practicability* of private acquisition of the commercially valuable information. If private reproduction of the information would be so expensive or arcane as to be impracticable, disclosure of that information through the FOIA conduit could damage the competitive position of the submitters, to the advantage of FOIA requesters. Such a disregard of the impact on private

---

**35.** *Id.* § 2.119(b) (emphasis added).

**36.** 498 F.2d 765, 770 (D.C.Cir.1974).

**37.** *See* Note, *Protecting Confidential Business Information from Federal Agency Disclosure After Chrysler Corp. v. Brown,* 80 Colum.L.

Rev. 109, 132–33 & n. 152 (1980); Note, *The Freedom of Nonfree Information: An Economic Proposal for Government Disclosure of Privately Submitted Commercial Information,* 32 Stan.L.Rev. 339, 345–46 (1980).

costs and benefits would not satisfactorily account for "competitive harm"; on the contrary, it would challenge the notion that "as a matter basic to our free enterprise system, private business information should be afforded appropriate protection, at least from competitors." [38]

We note also that the substantive criteria in EPA's confidentiality regulations are in accord with our analysis of Exemption 4. Section 2.208(e)(1) of the regulations restates the *National Parks* test of substantial competitive harm or impairment of Government ability to obtain information. [39] In addition, section 2.208(c) provides that information shall be held confidential if it "is not, and has not been, *reasonably obtainable* without the business's consent by other persons (other than governmental bodies) by use of legitimate means (other than discovery based on a showing of special need in a judicial or quasi-judicial proceeding)." [40] We think "reasonably obtainable" necessarily means that the cost of obtaining information is an important consideration in determining claims of confidentiality. Thus, although the substantive criteria set forth in the regulations do not exactly mirror those relevant under Exemption 4, the

essential test is the same: whether release of the requested information, given its commercial value to competitors and the cost of acquiring it through other means, will cause substantial competitive harm to the business that submitted it. [41]

### 2. The district court's error

■ The key to the grant of summary judgment below was the district court's adherence to a narrow definition of "confidentiality." For the court, as well as for EPA, disclosure could harm appellants only if there were no other means by which competitors could obtain the reports. Since reverse engineering is *technically possible*, disclosure would not create new access to otherwise unavailable information. Thus the court saw no problem in conceding that "there is some dispute about the degree of difficulty and the cost of acquiring a compressor for testing purposes," and then dismissing the controversy as irrelevant on the ground that "there is no dispute with respect to the fact that it can be done." [42]

Applying the substantial competitive harm standard set forth in the previous section, we find two key errors in the district court's summary disposition. [43] Its pri-

---

38. *National Parks & Conserv. Ass'n v. Morton,* 498 F.2d 765, 769 (D.C.Cir.1974) (quoting *Hearings on S.1666 Before the Subcomm. on Admin. Prac. and Proc. of the Senate Comm. on the Judiciary,* 88th Cong., 1st Sess. 199 (1964) (predecessor of bill enacted into law as FOIA Exemption 4).

39. 40 C.F.R. § 2.208(e)(1)(1980).

40. *Id.* § 2.208(c) (emphasis added).

41. Since EPA has determined to rest its disclosure decisions on the applicability or nonapplicability of Exemption 4, *see* p. 11 *supra,* it presumably intended that the substantive criteria set forth in § 2.208 establish the same test as under Exemption 4.

42. Mem. Order at 3 n. 3, *reprinted in* J. A. at 290. The court did not attempt to settle the dispute as to the actual cost of reverse engineering. At oral argument and in briefs, the parties suggested figures ranging from over $10,000 per compressor to under $1,000 per compressor. *Compare* Brief for Appellants at 14 *with* Brief for Appellees at 4.

43. The district court also rejected appellants' claim that they would be damaged by release of the test results. EPA had dismissed this contention on the ground that the test results could be repeated by anyone who acquired a compressor. Appellants challenged this finding, asserting that the results could not be duplicated because of variability in machines and testing conditions. The basis of the court's dismissal of this claim is ambiguous. On the one hand, the court stated that "[t]he short answer to this claim is that it is common knowledge in the trade that there will be variations in test results depending on the testing conditions." Mem. Order at 3, *reprinted in* J.A. at 290. On the other hand, the court found that through reverse engineering "anyone can duplicate the tests." *Id.* Given this ambiguity we cannot evaluate the court's ruling. On remand the court should consider whether the tests can be accurately duplicated, bearing in mind the relevance of the question whether the cost of obtaining compressors to conduct the tests is so substantial as to make private testing impracticable. If the court finds the tests cannot be accurately duplicated, it should consider whether competitors or consumers may misuse the information to the detriment of appellants'

mary mistake was in dismissing the dispute over the difficulty and cost of reverse engineering as irrelevant. If appellants can demonstrate, as they allege, that reverse engineering in the air compressor industry is commercially impracticable, their claim of competitive harm resulting from disclosure may have merit. Competitors would be able to acquire, at virtually no cost, the design and engineering specifications of appellants' compressors. The cost of reverse engineering is thus a disputed material fact that must be resolved prior to judgment.[44]

The district court also erred in concluding summarily that "[t]he design information submitted with respect to the compressors appears to be fairly basic and includes nothing that could not be secured from the general trade literature."[45] Appellants offered evidence that they have kept design information confidential and that disclosure would permit competitors to discover noise attenuation techniques that were costly to develop.[46] They thus alleged that the reports contained information that was commercially valuable to competitors. In rejecting this evidence in favor of EPA's contention that the information is not confidential, without giving any indication why it considered the issue undisputed or appellants' evidence incredible, the district court committed error. As this court held in *Sears, Roebuck & Co. v. GSA,*

> [w]here there is a conflict in the affidavits as to what adverse consequences will flow from the revelation of the facts contained in the documents sought to be disclosed, then it appears that there is indeed a conflict regarding very material facts which calls for some type of adversary procedure.... Summary judgment was not appropriate.[47]

### C. Issues on Remand

We have held that the district court erred in granting summary judgment because material factual issues—the cost and practicability of reverse engineering and the commercial value of the submitted design information—were in dispute. In the rest of

---

"trade secret" (or "confidential commercial information") for our purposes.

**45.** Mem. Order at 2, *reprinted in* J.A. at 289.

**46.** *See, e. g.,* Affidavit of Roy Kirkland 2, *reprinted in* J.A. at 259 ("Release of data and information concerning our specifications and silencing techniques and means enables our competitors to short cut their analysis of our designs without any investment and facilitates competitors' utilization of components identical to ours to improve noise emissions without having to incur research and development expense").

Appellants also alleged that they may be injured by release of "the mere fact that reports have been filed because this publicizes which companies have obtained production verified models." Mem. Order at 3, *reprinted in* J.A. at 290. The district court properly rejected this argument by pointing out that "no compressor could be distributed on the market without product verification by EPA." *Id.*

**47.** 553 F.2d 1378, 1382 (D.C.Cir.), *cert. denied,* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977). *See also National Ass'n of Government Employees v. Campbell,* 593 F.2d 1023, 1028 (D.C. Cir.1978) ("The factual issues on competitive loss ... warrant full evidentiary trial").

competitive positions. These are factual issues upon which conflicting evidentiary claims should be heard and resolved. *Cf. Sears, Roebuck & Co. v. GSA,* 553 F.2d 1378, 1382 (D.C. Cir.) ("The question of what this data in the reports would mean to an intelligent competitor is a factual issue"), *cert. denied,* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977).

**44.** The district court cited *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 476, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315 (1974), following its holding that the reverse engineering factor alone defeats all claims of confidentiality. *See* Mem. Order at 3, *reprinted in* J.A. at 290. *Kewanee Oil* does not apply here, however, because the issue in that case involved preemption by federal patent laws of state trade secret laws. In finding no preemption, the Court stated that:

> A trade secret law ... does not offer protection against discovery by fair and honest means, such as by ... so-called reverse engineering, that is by starting with the known product and working backwards to divine the process which aided in its development or manufacture.

416 U.S. at 476, 94 S.Ct. at 1883 (footnote omitted).

This statement, made in the context of distinguishing the scope of protection afforded by patent laws as compared to trade secret laws, simply has no bearing on the definition of a

this opinion we outline the legal issues remaining in the case to guide the court in determining how to proceed on remand.

### 1. *Did EPA violate its own regulations?*

Appellants contend that EPA erred in disposing of their claims summarily under 40 C.F.R. § 2.204(d)(2). In light of our opinion, which casts doubt on EPA's finding that the reports were *clearly* not entitled to confidential treatment, the district court may determine that EPA abused its discretion in invoking the summary procedure in this case. The court could thus find that the information "may be entitled to confidential treatment" and remand to the agency for a redetermination of the confidentiality claims under § 2.204(d)(1).[48]

### 2. *Does Exemption 4 apply to the requested information?*

█ On remand the district court, or EPA if the court returns the case to it, will have to resolve the factual issues relevant to consideration of "substantial competitive harm" and thus the applicability of Exemption 4. If this exemption is found not to apply, disclosure should follow pursuant to FOIA, unless some other basis for withholding the information is found.[49] If Exemption 4 does apply, however, disclosure is inappropriate under EPA's regulations. In the typical reverse-FOIA case, we should emphasize, the applicability of Exemption 4 does not give the submitters a right to compel the agency to withhold the requested material. Rather, it entitles the agency to exercise discretion in determining whether or not to endorse the claims of confidentiality and thus to withhold the information.[50] In this case, however, EPA has chosen to be guided by the policy of FOIA in exercising its discretion to disclose: the applicable regulations provide that EPA will treat as confidential, and thus refrain from disclosing, all information that is exempt under Exemption 4.[51] Determination of the Exemption 4 issue, then, will also determine the confidentiality claims, absent some independent basis for compelled nondisclosure.

### 3. *Does the Trade Secrets Act or the Noise Control Act bar disclosure?*

The district court summarily rejected appellants' claims under the Noise Control Act and the Trade Secrets Act, finding that the Noise Control Act merely incorporated the Trade Secrets Act and that the Trade Secrets Act was inapplicable because it does not "provide plaintiffs a private right of action to enjoin agency disclosure."[52] The court was correct in finding that neither of these statutes provides a private right of action. But there remain two ways in which they are relevant in reverse-FOIA cases: (1) disclosure in violation of their provisions may be "not in accordance with law" under the APA, and (2) they may be withholding statutes under FOIA Exemption 3.[53]

---

**48.** Appellants also charge that EPA's use of its summary procedure "raises grave questions of constitutional infirmity." Brief for Appellants at 22. We think the district court does not need to consider this claim. If the court finds that EPA did indeed err in using the summary procedure, appellants will receive sufficient procedural safeguards under EPA's normal method of hearing and resolving confidentiality claims. *See* 40 C.F.R. § 2.204(d)(1)(1980).

**49.** *See* pp. 20–22 *infra.*

**50.** *See Chrysler Corp. v. Brown*, 441 U.S. 281, 290–94, 99 S.Ct. 1705, 1712–14, 60 L.Ed.2d 208 (1979). The agency's discretion is not, however, unconstrained. *See, e. g., Pennzoil Co. v.*

*FPC*, 534 F.2d 627, 631 (5th Cir. 1976) (agency disclosure may be an abuse of discretion where a "balancing of the public and private interests might compel secrecy").

**51.** 40 C.F.R. § 2.119(b)(1980); *see id.* § 2.201(e) (defining "reasons of business confidentiality" to encompass any concept that would authorize withholding under Exemption 4); p. 11 *supra.*

**52.** Mem. Order at 2, *reprinted in* J.A. at 289.

**53.** Exemption 3 provides that mandatory disclosure does not apply to matters that are "specifically exempted from disclosure by statute . . . ." 5 U.S.C. § 552(b)(3) (1976).

The first of these two possibilities derives from *Chrysler Corp. v. Brown.*[54] The Supreme Court's refusal in *Chrysler Corp.* to imply a private right of action under section 1905 of the Trade Secrets Act, as well as our holding today that no right of action exists under the Noise Control Act, was based largely on the fact that the statutory confidentiality provisions could be considered adequately under APA review.[55] The Court held that "any disclosure that violates § 1905 is 'not in accordance with law' within the meaning of 5 U.S.C. § 706(2)(A)."[56] Section 1905 makes it a criminal offense for an officer or employee of the United States to divulge information relating to trade secrets and other confidential matters "to any extent not authorized by law."[57] An agency may release such information pursuant to binding regulations only if the regulations were adopted under a grant of legislative authority from Congress.[58] On remand, therefore, the district court may need to determine whether the production verification reports are covered by the Trade Secrets Act or the Noise Control Act and, if so, whether EPA's regulations authorize disclosure.[59]

The second way in which these statutes may be applicable is pursuant to FOIA Exemption 3. One of appellants' main arguments is that the Noise Control Act, and presumably the Trade Secrets Act as well, is an exempting statute that mandates nondisclosure under Exemption 3. In *Chrysler Corp.* the Supreme Court refused to decide whether the Trade Secrets Act is such a withholding statute.[60] In 1976 Congress narrowed Exemption 3, making it more difficult for statutes to qualify as withholding statutes.[61] Nonetheless, the Supreme Court's recent decision in *Consumer Product Safety Commission v. GTE Sylvania,*[62] in which it held that the Consumer Product Safety Act was a withholding statute under Exemption 3, makes clear that Exemption 3 claims have by no means become impossible to sustain. If the district court finds that Exemption 4 is applicable to the informa-

---

**54.** 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

**55.** *Id.* at 317; *see* p. 10 *supra.*

**56.** 441 U.S. at 318, 99 S.Ct. at 1726.

**57.** 18 U.S.C. § 1905 (1976).

**58.** 441 U.S. at 303–08, 99 S.Ct. at 1718–21.

**59.** Most courts have interpreted § 1905 as being coextensive with Exemption 4. *See* Clement, *The Rights of Submitters to Prevent Agency Disclosure of Confidential Business Information: The Reverse Freedom of Information Act Lawsuit,* 55 Tex.L.Rev. 587, 605 & n. 79 (1977) (cases listed). In this case, moreover, it is doubtful whether the Trade Secrets Act will prove important. As we have pointed out, if Exemption 4 applies to the requested reports, disclosure will be withheld under EPA's regulations. Moreover, if Exemption 4 does not apply and if § 1905 is construed to be broader than Exemption 4 so as to apply to the information, FOIA may provide the necessary "authorization by law" to satisfy § 1905. (In *Chrysler Corp.* the Supreme Court called this a "theoretical possibility" that "is at most of limited practical significance in view of the similarity of language between Exemption 4 and the substantive provisions of § 1905." 441 U.S. at 319 n. 49, 99 S.Ct. at 1726 n. 49.) Finally, EPA's regulations define "reasons of business confidentiality" to include "any concept which

requires EPA to withhold information ... under 18 U.S.C. 1905," 40 C.F.R. § 2.201(e) (1980), suggesting that EPA will not seek to disclose information where the Trade Secrets Act points toward nondisclosure. The real test of the relationship between Exemption 4 and § 1905 will come where, unlike here, an agency's regulations permit it to disclose information even where Exemption 4 is applicable. In such a case, the issues would be raised whether the Trade Secrets Act also applied and, if so, whether disclosure was authorized by law within the meaning of § 1905.

If the Trade Secrets Act does not apply, the court would need to consider the meaning of the Noise Control Act's confidentiality section. *See* 42 U.S.C. § 4912(b)(1) (1976).

**60.** 441 U.S. at 319 n. 49, 99 S.Ct. at 1726 n. 49.

**61.** A statute qualifies under Exemption 3 only if it "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) established particular criteria for withholding or refers to particular types of matter to withheld." Government in the Sunshine Act, § 5(b), Pub.L.No. 94–409, 90 Stat. 1247 (1976) (codified at 5 U.S.C. § 552(b)(3) (1976)).

**62.** 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980).

tion in this case, it will not have to rule on appellants' Exemption 3 claims. If, however, the court finds Exemption 4 to be inapplicable, it should proceed to determine whether the Trade Secrets Act or the Noise Control Act is a withholding statute.[63]

## III. CONCLUSION

Our analysis of the factors relevant to Exemption 4 leads us to conclude that substantial and material facts are in dispute. We therefore reverse and remand. The district court is free to proceed in whatever manner it finds appropriate and consistent with this opinion.

*So ordered.*

**63.** This court has expressed the view that Exemption 3 " 'does not incorporate section 1905 into the FOIA in such a way as to make section 1905 broader than the fourth exemption.' " *National Parks & Conserv. Ass'n v. Kleppe,* 547 F.2d 673, 686 (D.C.Cir.1976) (quoting *Charles River Park "A", Inc. v. Department of HUD,* 519 F.2d 935, 941 n. 7 (D.C.Cir.1975)). Other courts, however, have criticized this position and concluded that § 1905 is an exempting statute under Exemption 3. *See, e. g., Westinghouse Elec. Corp. v. Schlesinger,* 542 F.2d 1190, 1199–203 (4th Cir. 1976), *cert. denied,* 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977).