## AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Plaintiff,

v.

## FEDERAL AVIATION ADMINISTRATION, et al., Defendants.

Civ. A. No. 80–1982.

United States District Court,
District of Columbia.

Dec. 10, 1982.

Gary Green, Air Line Pilots Ass'n Int'l, Washington, D.C., for plaintiff.

John D. Bates, Asst. U.S. Atty., Washington, D.C., for defendants.

James J. Murphy, Bryan, Cave, McPheeters & McRoberts, Washington, D.C., for McDonnell Douglas Corp.

James A. Hourihan, Hogan & Hartson, Washington, D.C., for Boeing Co. and Lockheed Corp.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This matter is before the Court on plaintiff's motion to compel disclosure of records and compilation of index concerning the plaintiff's request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 for records pertaining to the Federal Aviation Administration's certification of the DC–9–80 aircraft manufactured by intervenor-defendant McDonnell Douglas Corporation (MDC). The FAA has completed processing of plaintiff's FOIA request, with the assistance of MDC. A large number of documents were released to plaintiff; although a much greater number have been withheld. The FAA has asserted FOIA's Exemption 4, which exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential," as the basis for its decision to withhold the documents. 5 U.S.C. § 552(b)(4). By the instant motion, plaintiff seeks to require the FAA to compile a *Vaughn* index as to the materials withheld and undertake further segregation of releasable information from the documents. Representative documents have been examined by the Court *in camera*. For the reasons which follow, plaintiff's motion is denied and the cause dismissed, with prejudice as to some categories of documents and without prejudice as to others.

The withheld materials fall within four descriptive categories and a miscellaneous category. The first category consists of MDC's engineering drawings and associated

change orders relating to design and technical aspects of the DC–9–80. The representative engineering drawing submitted *in camera*, denoted "Door Assy—Thrust Reverser," consists of three pages of blueprints portraying technical design information about, evidently, the aircraft's door assembly and thrust reverser mechanisms. The drawings demonstrate such things as the spatial relationship of the components, the types of parts used, the manner in which the various parts were attached, metallurgical specifications, manufacturing tolerances, and so on. The title block for each drawing includes the subject or title of the drawing, identification numbers for parts and revisions, the date of preparation, and the names of the officials involved in the preparation of the drawing. These drawings have been withheld in their entirety.

The engineering change orders, also withheld in their entirety, are documents of one or more pages which concern design modifications and indicate changes made to specific engineering drawings. The representative change order submitted *in camera*, also denoted "Door Assy—Thrust Reverser," concerns changes made to the design embraced in the engineering drawing of this mechanism. The change orders include what essentially are engineering drawings of the areas affected by the changes, and technical data surrounding the changes. They include much of the same kind of information found in the engineering drawings.

The second category of withheld documents involves flight test cards, which set forth flight test procedures and the results yielded thereby. The information contained within is technical data concerning flight characteristics and performance of aircraft systems. Defendant has submitted *in camera*, as a representative sample thereof, a flight test card packet on the DC–9–80 Navigation Instrument Comparator Monitor. While most of the technical information was withheld, the FAA had previously released to plaintiff the initial sheet of the flight test packet, which is the Statement of Compliance with Federal Aviation Regulations, or FAA Form 8110–3. Form 8110–3 summarizes information contained in flight test cards, as does Form 8100–1, Conformity Inspection Records. These two types of documents were released to plaintiff, along with all MDC correspondence accompanying the transmittal of flight test cards to the FAA.

The third and fourth categories of withheld records consist of, respectively, non-narrative reports and narrative reports. These constitute the greatest part of the withheld materials, some 40,000 pages among them. The reports were submitted to the FAA by MDC in order to demonstrate, in analytical, mathematical, statistical, and graphic terms, the conformance of the DC–9–80's design with the Federal Aviation Regulations.

Non-narrative reports, which constitute some 32,000 pages of the total 40,000 pages of reports, contain technical data in the form of computer printouts, engineering drawings, tables of calculations, and the like. The small amount of textual material in these reports, such as the tables of contents, title pages, introductions, and lists of illustrations, revisions, figures, and references, was released to plaintiff. The non-narrative report submitted *in camera* is a 365-page document entitled "DC–9–80 Dynamic Analysis Basic Data" and designated Report MDC J 7822. The cover sheet and all pages through page 11 were released to plaintiff; this released material includes the table of contents and other such introductory material.

Narrative reports contain descriptive text as well as technical data similar to and often drawn from the non-narrative reports. These reports concern the results of tests performed on the aircraft and analyses of its design. As was the case with the non-narrative reports, the FAA released to plaintiff the tables of contents and like material. The FAA submitted *in camera* MDC's narrative report MDC J 8749, entitled "Final Report, DC–9 Super 80/DC–9–50 Comparative Flight Crew Workload Study." This is a document with a 48-page main section and four appendices of 12 to

27 pages each. Besides the introductory material, some seven additional pages of the main section were released as were the first page or pages of each appendix.

The several documents which comprise the miscellaneous category include three letters totaling five pages of correspondence dealing with particular airlines' exterior markings for DC–9–80 aircraft, and 30 pages of technical information from the seven-volume preliminary Type Inspection Report, which otherwise was released. Plaintiff apparently has ceased to pursue these documents (see attachments to affidavit of John E. O'Brien, filed by plaintiff on Feb. 17, 1981).

 FOIA provides that an agency has the burden of proving that the withheld material falls within a FOIA exemption. 5 U.S.C. § 552(a)(4)(B). To satisfy this burden, the agency must furnish a detailed description of the contents of the withheld material and the reasons for nondisclosure. *See, e.g. National Parks and Conservation Association v. Kleppe,* 178 U.S.App.D.C. 376, 547 F.2d 673 (1976); *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). However, the agency can meet that burden without indexing if it can show that the documents collectively are of an exempt nature. *Baker v. C.I.A.,* 188 U.S.App.D.C. 401, 580 F.2d 664, 667–69 (1978). The test for determining whether a document may be withheld under Exemption 4 is set forth in *National Parks & Conservation Association v. Morton,* 162 U.S.App.D.C. 223, 498 F.2d 765 (1974). Information is exempt from disclosure if disclosure would "impair the government's ability to obtain necessary information in the future," or "cause substantial harm to the competitive position of the person from whom the information was obtained." 498 F.2d at 770.

██ It is evident from this Court's *in camera* examination of the representative documents that each of the categories of documents requested contains information the disclosure of which could cause MDC substantial competitive harm. One example of such information is the part numbers and descriptions that appear throughout the engineering drawings and change orders in particular and also in the non-narrative reports. Another example of such information is the design and assembly data that appear in all four categories of documents. Disclosure of this information would give potential competitors of MDC in the market for DC–9–80 replacement parts an unfair advantage. The Court of Appeals for this Circuit recognized this same problem in a case in which it rejected an argument that design and engineering specifications for certain air compressors were not entitled to confidential treatment because competitors could obtain such information by dismantling the machines and performing their own testing. The Circuit Court noted that

Because competition in business turns on the relative costs and opportunities faced by members of the same industry, there is a potential windfall for competitors to whom valuable information is released under FOIA. If those competitors are charged only minimal FOIA retrieval costs for the information, rather than the considerable costs of private reproduction, they may be getting quite a bargain. Such bargains could easily have competitive consequences not contemplated as part of FOIA's principal aim of promoting openness in government.

*Worthington Compressers, Inc. v. Costle,* 213 U.S.App.D.C. 200, 662 F.2d 45, 51 (1981). The same concerns are present here.

Upon examination of the engineering drawings and change orders, the Court finds that these are exempt from disclosure under Exemption 4 and that no index need be made. The drawings themselves constitute exempt technical data the disclosure of which could cause competitive harm to MDC. Likewise, the part-numbers and other similar information that appear on the drawings could cause the proprietor competitive harm. The only innocuous information on the drawings would be found in the title blocks, and that information would be meaningless to plaintiff or others. Simi-

larly, the change orders could not be sanitized and still yield meaningful information. Even the titles would indicate to a competitor what modifications MDC had chosen to make to its aircraft design in addition to exposing MDC's design secrets. As such, the engineering drawings and change orders do not contain "reasonably segregable" information that is disclosable.

▮ With regard to the flight test cards, as a consequence of the release to plaintiff of the FAA forms summarizing the results of the flight tests, plaintiff now has sufficient information with which to narrow its request for these documents or challenge the assertion of Exemption 4. Therefore, as the FAA has described the withheld documents and presented its asserted justification for withholding (Exemption 4), no *Vaughn* index need be made as regards flight test cards. This question is academic, however, inasmuch as the flight test cards contain nothing but exempt technical data derived from aircraft testing. This material therefore is exempt from disclosure under the asserted exemption, there being no "reasonably segregable" material therein.

▮ Nor need the Court compel the FAA to compile a *Vaughn* index for the narrative and non-narrative reports. By disclosing the relevant tables of contents and introductory material the FAA has provided plaintiff with the equivalent of a *Vaughn* index. Moreover, it is evident that a great portion of the withheld material in the non-narrative reports, like that in the flight test cards, is technical data that could cause MDC competitive harm were it to be disclosed.

Similarly, with regard to the narrative reports, it is possible that these contain non-exempt material as well as exempt material. However, as plaintiff has enough information in its possession (the tables of contents and other introductory material) in order to proceed, the Court will not entertain its request to compel production of these documents. As such, should plaintiff at this time continue to seek information contained within the narrative and non-narrative reports, plaintiff must make use of the introductory material already released in order to narrow its requests.[1]

In light of the foregoing, plaintiff's motion to compel disclosures of records and compilation of index shall be denied and the cause dismissed in part with prejudice and in part without prejudice, as specified in the accompanying Order.

## ORDER

In accordance with the Memorandum Opinion entered in this action this date, December 10, 1982, it is, by the Court,

ORDERED, that plaintiff's motion to compel disclosure of records and compilation of index shall be and hereby is denied, and it is

FURTHER ORDERED, that this cause stands dismissed, with prejudice, as to the requests for engineering drawings and associated change orders, flight test cards, and documents referred to in the accompanying Memorandum Opinion as miscellaneous documents, and it is

FURTHER ORDERED, that, as regards plaintiff's requests under the Freedom of Information Act for narrative and non-narrative reports, this cause stands dismissed without prejudice to further resort to judicial intervention after plaintiff has submitted its narrowed request for such rec-

---

1. Plaintiff has modified its request for documents by asking for flight test data as to 24 different tests and for various specific reports, which, apparently, it seeks disclosure in the entirety. See attachments to O'Brien affidavit. As explained above, the flight test cards are exempt from disclosure and plaintiff has already received FAA forms summarizing the results of the flight tests. Regarding the request for specific reports, as plaintiff is in possession of tables of contents and other introductory material, plaintiff is able to narrow its requests to those particular portions of the reports that it desires. To require the FAA to undertake further segregation of these reports would be unduly burdensome. As such, the Court does not accept the modified requests in the attachments to the O'Brien affidavit as narrowed sufficiently to meet the "reasonable description" requirement of FOIA. 5 U.S.C. § 552(a)(3).

ords to defendant FAA and has exhausted all administrative remedies with respect to such narrowed request.