## OCCIDENTAL PETROLEUM CORPORATION, Plaintiff,

v.

## SECURITIES AND EXCHANGE COMMISSION, Defendant.

### Civ. A. No. 86-3428.

United States District Court, District of Columbia.

May 15, 1987.

John T. Boese, Washington, D.C., Robert E. Juceam, John F. Byrn, C. Sanders McNew, New York City, for plaintiff.

Richard M. Humes, Martha H. McNeeley, S.E.C., Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

This is a reverse-Freedom of Information Act ("FOIA") case. Occidental seeks to enjoin the SEC from disclosing to a FOIA requestor many documents from its files which Occidental had previously submitted in confidence to the SEC during its investigation of Occidental's alleged illicit payments to certain domestic and foreign officials. Occidental claims that the documents should not be disclosed primarily because they contain confidential commercial information protected from disclosure by FOIA exemption four, 5 U.S.C. § 552(b)(4) (1982). Following administrative proceedings, which will later be described in detail, its claims were rejected as to many of the documents and this suit followed. The issues are now before the Court on the SEC's motion to dismiss or, alternatively, for summary judgment. The motion and opposition are both thoroughly documented with various *in camera* and public filings. On the Court's insistence

the content of the administrative record was finally established and thereafter the Court heard full argument and reviewed all materials filed. The matter is now ripe for resolution of the motion.

SEC published a report of its Occidental investigation and required the company to file more informative Form 8–K public reports concerning its conduct. These filings attracted two sweeping FOIA requests that came into focus in this case. Initially, in December, 1981, Mr. John W. Shaver Nava filed a FOIA access request seeking disclosure of documents and testimony in SEC files concerning the involvement of Occidental or its officials with "corrupt or unlawful activities abroad or the making of payments or bribes to officials of foreign governments." The SEC FOIA Officer determined that about 8,000 pages of material in the Commission's investigative file would be responsive. He then notified Occidental and invited it to substantiate its earlier request for confidential treatment of the material made at the outset of the investigation.

While this FOIA request was being processed, the SEC received another FOIA request in November, 1985, from Mr. Steven Weinberg. His request was substantially broader than the Shaver Nava request but comprehended all of the papers Shaver Nava had previously requested.

The SEC General Counsel issued decisions on the Shaver Nava materials in letter form on May 7, 1986 and August 11, 1986, withholding some documents from disclosure and ordering many other documents released. Suit in this Court to enjoin disclosure of any documents was instituted by Occidental on May 16, 1986, in Civil Action No. 86–1351. Subsequently, Shaver Nava settled his private controversy with Occidental and dropped his FOIA request, thus temporarily mooting the case. The SEC apparently realized it would still take it several years fully to process the entire Weinberg request. It therefore decided to make a partial response to him by releasing the Shaver Nava materials it had already processed. This decision reactivated the lawsuit, which now focuses on what constitutes a partial response to the Weinberg FOIA request.

Before proceeding, the Court directed the SEC to consider some *in camera* declarations previously submitted by Occidental in No. 86–1351 which purported to contain new information bearing on confidentiality, arising from matters occurring after the SEC completed its processing of the Shaver Nava request. This resulted in a slight modification of the SEC's position, announced by General Counsel letter dated March 17, 1987. After the administrative record was established, this matter advanced to the present stage requiring the Court to review an SEC final decision represented by the three letters from the General Counsel dated May 7, 1986, August 11, 1986 and March 17, 1987.

Proceedings before the SEC relating to the FOIA are governed by a specific regulation found at 17 C.F.R. § 200.83 (1986). The basic procedure contemplated may be readily summarized. When the SEC receives a FOIA request for disclosure of papers in its files which were turned over to it under a claim for confidential treatment, it advises the party which supplied the papers of the FOIA request. The FOIA Officer then asks for written substantiation of the claim for confidentiality. 17 C.F.R. § 200.83(d)(1). Upon receiving such substantiation, the FOIA Officer, without explanation, rules and the party seeking confidential treatment is notified. If the ruling is adverse to confidentiality in any respect an appeal to the General Counsel is available. 17 C.F.R. § 200.83(e)(1). This again is a written appeal. After receiving factual and legal advice from his staff the General Counsel, who may reverse any aspect of the FOIA Officer's determination, rules on the appeal. 17 C.F.R. § 200.83(e)(2) & (3).

These regulations do not adequately allow for problems a reviewing court will encounter in a reverse-FOIA case. Moreover, in its practical applications this procedure presents insurmountable problems in heavily documented, complex cases where thousands of interrelated pages are involved. A document may have relevance

both to other papers within the group of papers to be released and, where the SEC proceeds in stages, to the many thousands of other pages covered by the same FOIA request which have not yet been examined or processed. This was such a case and without particularized rulings identifying specific documents, review becomes meaningless.

The SEC's FOIA regulation places upon a person claiming confidential treatment of commercial information the continuing fear that papers required to be filed in substantiation of such a claim will themselves be made public even before the merits of the underlying confidentiality claim itself have been adjudicated. In this instance, the requestor also sought access to any substantiations of confidentiality received in the reverse-FOIA agency proceedings. The FOIA regulation makes no provision for advance assurance of confidentiality. All that is allowed is a right for the opponent of disclosure to indicate that it believes a substantiation "should be afforded confidential treatment," 17 C.F.R. § 200.-83(d)(viii). In accordance with the regulation, the FOIA Officer processed Occidental's submission for immediate disclosure at the same time it was still entertaining Occidental's various submissions to substantiate confidentiality for the underlying documents. Thus, the more Occidental revealed the injury to it that it believed release from confidentiality would entail, the more it stood at immediate hazard of revealing to the FOIA requestor himself the significance of interrelated materials. It was forced by the regulation and SEC practice, over its protest, to draw a road map leading to the points of greatest damage to itself. This "Catch 22" dilemma was never satisfactorily resolved, the agency temporized, and bitter misunderstandings developed.

Occidental declined to file a detailed written substantiation backed by factual affidavits. After two specific requests by the FOIA Officer for a written submission, Occidental filed a short, general substantiation letter. The FOIA Officer ordered disclosure of this and the other limited written submissions Occidental furnished. It was

agreed, however, that a representative of both Occidental and the SEC FOIA Office would orally together review each page of the thousands of pages involved, to identify Occidental's particularized concerns. Regular meetings were held over many months, both before and after filing of Occidental's substantiation letter. The administrative record fails to disclose what in fact was said or done during this review of the documents.

Occidental apparently understood that the FOIA Officer would eventually respond to Occidental's supplementary oral submissions and would give specific reasons for exempting or not exempting documents from disclosure. This, in turn, would focus issues for appeal. The FOIA Officer, however, ultimately gave no reasons in his two-page denial of confidentiality.

This may have breached an oral agreement but was in accord with the regulation and illustrates a further defect in the Commission's procedures. When an appeal was taken to the General Counsel pursuant to 17 C.F.R. § 200.83(e), there was nothing but a flat denial as to the hundreds of pages of papers ordered disclosed which Occidental claims contain confidential commercial information. Occidental had no information as to why it had not prevailed, although it had by its written and oral submissions made a positive showing that there were grounds for continued confidential treatment.

Still wary of disclosure of its full reasons and after being denied the opportunity to make oral presentations to the General Counsel, Occidental declined to file a detailed substantiation with affidavits in support of its appeal. Rather, it filed a lengthy general memorandum. It then devised an elaborate system in which the various grounds for confidentiality discussed in the memorandum were correlated with colored tags affixed to the documents, which were not otherwise identified. It also provided six volumes of work sheets for the General Counsel's convenience listing each document or category of documents and the color-coded argument or arguments for confidentiality, and provided

space for comments and conclusions. During the appeal Occidental stated its objection to the lack of specificity of the FOIA Officer's determination, which it correctly felt hindered its ability to take an appeal on a reasoned basis.

The SEC's General Counsel then obtained full written factual and legal advice from his staff, none of which is part of the administrative record or otherwise revealed to Occidental or the Court. Thereafter, he gave his generalized rulings without examining the papers himself and without discussing Occidental's claims by document or category of documents.

The result of this flawed process is now before the Court. Since Occidental has never had an opportunity to address the issues on appeal before the General Counsel, whose ruling provides no basis for the Court to review the evidence underlying his ruling on a document-by-document basis, this matter must be remanded to the SEC for further proceedings.

To understand the obvious need for a remand it is appropriate to set out the precise role of the District Court in reviewing administrative rulings disclosing documents against a reverse-FOIA demand for continued confidential treatment.

*First,* the Court must identify the administrative record. Here, in spite of the Court's best efforts, the precise nature of the administrative record remains in doubt. Uncertainties involve, for example, the lack of: (1) any written record of Occidental's oral substantiations; (2) the work sheets submitted by the FOIA Officer to the General Counsel's staff; and (3) newspaper sources apparently relied on by the General Counsel.

*Second,* where the issue is raised, the Court must be satisfied the administrative record adequately defines the issues and reflects the path by which the agency reached its result. This requirement of § 10 of the Administrative Procedure Act, 5 U.S.C. § 706 (1982), has not been met. The FOIA Officer's initial decision in this proceeding failed to comply with § 10 inasmuch as it did not indicate the supporting facts or legal conclusions relied on and

therefore left Occidental without adequate notice or opportunity to be heard on appeal to the decision maker who, again, acted without notice. *See National Organization for Women v. Social Security Administration,* 736 F.2d 727, 738–41 (D.C. Cir.1984) (per curiam) (Robinson, C.J., concurring in result); *id.* at 745–47 (McGowan & Mikva, JJ., concurring in result).

*Third,* the Court must determine whether or not rulings are supported by substantial evidence and are rational. With little or no matching of facts against the specific documents, generalized statements that ignore claims advanced by a reverse-FOIA objector are nonreviewable, as the present record illustrates.

One alternative to remand suggested by Occidental—discovery followed by document-by-document review by the Court—is entirely inappropriate. While there are many open-ended issues which could perhaps be clarified by discovery, development of additional facts in this fashion will not hasten resolution. As a practical matter, this Court cannot conduct such a de novo-type hearing in a voluminous matter such as this, in an attempt to identify reasons supporting the administrative ruling, and certainly has no obligation to do so. *Id.* at 745–47 (McGowan & Mikva, JJ., concurring in result); *see also Worthington Compressors, Inc. v. Costle,* 662 F.2d 45, 49 (D.C. Cir.1981). Nor can the agency bolster its case by presenting further reasons or urging that assumptions were made by the deciding official which the official did not specifically note himself. *AT & T Information-Systems, Inc. v. GSA,* 810 F.2d 1233, 1236 (D.C.Cir.1987) (per curiam).

Because of the manner in which the administrative proceedings were conducted in this case, the Court is not able to perform its role. Simply by way of example, it should be noted that the SEC's motion leaves many unresolved issues of fact. There is no index placing the General Counsel's ruling against specific documents so that a court could determine precisely why any particular document is being disclosed. The prior release of information noted by the SEC, which information Occidental

claims is still confidential, is only vaguely indicated and not entirely reproduced in the administrative record. A public news report of the inquiry, moreover, cannot alone make all underlying documents containing commercial information automatically public if not found in the news report. Nor can it even be determined how the Commission views the governments of Venezuela and Libya which Occidental has factually identified as its competitors in certain important respects.

The seed of this difficulty is found in the obvious failure of the Commission's administrative process. Since the FOIA Officer gave no reasons for overruling Occidental's showing of confidentiality of the commercial information there was nothing to appeal. Obviously, if the FOIA Officer had indexed the documents with an indication of his rulings, document by document, cross-referenced to information supplied by Occidental, this could have been avoided. The General Counsel compounded the difficulty by refusing to release the staff memo which it is said presents a factual and legal basis for his ruling. He had a right to structure his consideration in this manner, see United States v. Morgan, 313 U.S. 409, 421–22, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941); National Small Shipments Traffic Conference, Inc. v. ICC, 725 F.2d 1442, 1450 (D.C.Cir.1984), but by so doing he continued to cloak the entire matter with such secrecy that his decision as announced affords no basis on the record to even analyze the merits of his actions.

The Court recognizes that Occidental's objections to the SEC's reverse-FOIA process requires a test of each page of paper to be disclosed.[1] This proper tactic adds to short-term delay. Nonetheless, considering the years of further work necessary to complete processing of the Weinberg blunderbuss request, which encompasses approximately 210 boxes of documents, time benefits will later accrue to the requestor in the long haul if procedures are set into proper order from the outset.

The Commission's position in processing Occidental's confidential substantiations for disclosure simultaneously with its review of the underlying documents is self-defeating. When a court test of the Commission's rulings is a certainty, it is surely an irrational act not to accommodate a concern of one in Occidental's position, by at least reserving for separate consideration the disclosure of the substantiation materials until after the validity of the disclosure decision pertaining to the documents themselves has been judicially tested.[2] An oral approach to these problems leads to misunderstanding, as it has here. But anyone required to justify confidential treatment should not have his hands tied behind his back from the outset so that he is unable to put his case fully and fairly before the decider on paper. Serious questions of policy and fair play are involved.

The SEC action cannot be sustained on the present record. Clear defects in the administrative process have been revealed and these must be remedied and can only be accomplished by a remand. The Court must vacate the decision of the Commission to disclose pending further proceedings on remand before the agency to correct the deficiencies the Court has noted. What is

1. Several other objections lodged by Occidental are easily dispensed with. There is no merit in Occidental's contention that these documents are not agency records. See 15 U.S.C. § 78x(a) (1982); General Electric Co. v. NRC, 750 F.2d 1394, 1400 (7th Cir.1984). Nor is it correct in seeking to create a higher standard for disclosure of the papers by invoking the Trade Secrets Act, 18 U.S.C. § 1905 (1982), which even assuming it applies through FOIA exemption three, in practice can provide no greater protection than FOIA exemption four, see Chrysler Corp. v. Brown, 441 U.S. 281, 319 n. 49, 99 S.Ct. 1705, 1726 n. 49, 60 L.Ed.2d 208 (1979); National Parks and Conservation Ass'n v. Kleppe, 547 F.2d 673, 686–87 (D.C.Cir.1976). Finally, Occiden-

tal's suggestion that it has a constitutional privacy interest in preventing disclosure is without merit.

2. The Court takes no position on whether disclosure in full of substantiation materials in a case such as this can ever be justified under the Administrative Procedure Act, or whether the agency is required to inform an opponent of disclosure prior to filing of substantiation materials whether they will remain confidential. These issues present numerous factual and legal problems and cannot be resolved on the record and briefs before the Court.

needed is an agency decision reached under procedures that meet the requirements of the Administrative Procedure Act which is also sufficiently precise to enable prompt informed judicial review. The Commission's motion for summary judgment is denied, the agency's decision to disclose is vacated, and the case is remanded to the Commission for further proceedings consistent with this decision.